FEHR ET AL., APPELLEES, *v.*
MURDOCK ET AL., APPELLANTS.

(No. C-860565—Decided
July 15, 1987.)

*Gregory L. Adams,* for appellees.
*Arthur M. Ney, Jr.,* prosecuting attorney, and *James W. Harper,* for appellants.

*Per Curiam.* On August 15, 1981, the control of and responsibility for the operation of the Community Correctional Institute ("CCI") was transferred by agreement from the city of Cincinnati to the County Commissioners and the Sheriff of Hamilton County. Thirty-three corrections officers originally hired by the city were "transferred" to employment by the sheriff by being offered and then accepting that new employment under a uniform plan. On June 28, 1984, the thirty-three corrections officers sued the county commissioners and the sheriff to recover "back pay" that they claimed was due and owing to them because the sheriff used August 15, 1981 as the starting date for computation of their annual "step raises" rather than the earlier starting dates of their employment by the city.

Both sides filed motions for summary judgment and these were submitted to the trial court on the basis of a stipulation of facts. The court held for plaintiffs-appellees. It found that two of them had not in fact been transferred from city employment to county employment and dismissed their claims, but the court held that the other thirty-one were each entitled to a specific amount, the aggregate judgment against defendants-appellants being $47,175.81.

On appeal, appellants assert in their first assignment of error that the trial court erred in denying their motion for summary judgment and, in the second, in granting appellees' motion for summary judgment. Because these motions were presented on agreed facts and because there is no genuine issue of material fact, we can consider the denial of appellants' motion for summary judgment as an order subject to our review, just as the granting of appellees' motion for summary judgment is a final appealable order. We find merit in both assignments of error.

By an agreement dated December 17, 1980, and two supplements thereto dated May 7, 1981 and August 21, 1981 (the three documents are herein referred to as the "agreement"), the city agreed to transfer the CCI to the county and the sheriff effective 7:00 a.m., Saturday, August 15, 1981 (the "transfer date"). Insofar as pertinent to the pay dispute under review, the agreement provided as follows: (1) all "City Correction Division employees" should be provided the opportunity to apply for employment with the sheriff under a "total compensation plan"; (2)

the city would pay them until the transfer date and the county would assume all responsibility for management, organization, salaries and benefits after the transfer date (with the minor exception of health care benefits, which continued under the city plan until August 31, 1981); (3) the city would pay the employees who accepted employment with the county on the transfer date a lump sum "for unused vacation accruals, compensatory time accruals and longevity payments prorated to the transfer date"; (4) the county would give its new employees credit for the amount of unused sick leave accrued during their city employment; and (5) *"County shall accept the years of service recognized by the City at 7:00 a.m. on August 15, 1981, as consecutive employment with the City and other eligible public service and shall use those years as the basis for further accumulation and computation of the rate of vacation time earned during County employment."* (Emphasis supplied.)

All thirty-one transferred employees were uniformly classified by the sheriff as Corrections Officers II and they were placed in one of three "pay steps." The sheriff's policy was to grant his deputies step raises on the first, second and third anniversaries of their employment by him, no step raises being given after the third anniversary. (Because of lack of funds, no step raises were given to any of the sheriff's deputies between March 1981 and December 3, 1981.)

A stipulated chart in the record sets forth each officer's city starting date, his city salary, his county starting date, his "pay step" in the county plan and his county salary. Although the city starting dates were all different because the officers had been hired by the city at different times, they all had one uniform county starting date — August 15, 1981. The sheriff determined the "pay step" for each officer on the basis of full years of prior service with the city. Thus an officer was placed at "entry level" if his prior city service on August 15, 1981, was less than twelve months, at "1 year" if his prior city service on August 15, 1981 was more than twelve months but less than twenty-four months, and at "2 years" if his prior city service was more than twenty-four months and less than thirty-six months. For example, Officer Fehr's city starting date was August 31, 1980, but because he had not served the city for a full year, he was placed by the sheriff at "entry level"; Officer Smith's city starting date was April 9, 1979, and because his city service was more than twenty-four months but less than thirty-six months, he was placed at "2 years."

The sheriff paid all thirty-one corrections officers their respective step raises uniformly on August 15, 1982, the anniversary of their *county* starting date. This is the source of the officers' complaint, because they argue that they should have been given their step raises on the anniversaries of their individual *city* starting dates. For instance, Officer Fehr claimed that his step raise should have been paid on August 31, 1981, the first anniversary of his city starting date, and that the sheriff owed him $2,248.98; and Officer Smith claimed that the failure to pay his step raise on April 9, 1982, the third anniversary of his city starting date, caused him to be underpaid by $363.96. As noted above, the aggregate of all thirty-one claims was $47,175.81.

The trial court granted the officers' motion for summary judgment, denied the motion for summary judgment filed by the county commissioners and the sheriff, and entered a judgment in favor of the thirty-one transferred employees, specifying each

individual amount. In its memorandum of decision, the court said in pertinent part:

"After reviewing Ohio statutes relating to prior service of public employees who transfer to a different area of public service, it is clear that the legislative intent expressed in these statutes requires the new employer to recognize an employee's prior service for the purpose of granting benefits and fixing compensation.

"In this case, defendant Sheriff has not recognized plaintiffs' full prior service with the City when he used August 15, 1981 as the plaintiffs' hiring date with the Sheriff. To grant plaintiffs their full prior service, the Sheriff must use plaintiffs' original City hiring dates.

"The Sheriff's procedure in assigning the anniversary date of August 15, 1981, undeniably ignores substantial periods of plaintiffs' prior service employment with the City. The Sheriff's procedure also is contrary to plaintiffs' reasonable expectations that they would be receiving step-up raises on the anniversary of their City hiring dates."

The court erred. The sheriff was not required to pay the step raises on the basis of the city starting dates either by the Ohio statutes, or by the agreement between the parties, or by the officers' "reasonable expectations."

We hold that the Ohio statutes did not require the sheriff to pay step raises as the lower court ordered.

In 1981, the Ohio statutes did not specifically require that for purposes of compensation rights and benefits based on length of service, an employee transferred from a municipality to a county must have his prior service treated as if it had been served with the county. A statute mandating credit for prior employment was enacted for the first time in 1983. R.C. 9.441.[1] However, under R.C. 1.48, that new enactment was prospective in operation because it was not expressly made retrospective.

In 1981, there were other statutes that gave credit for prior employment in public service, but they were all focused on employment benefits other than step raises. R.C. 9.44 applied only to credits in computing the amount of vacation leave. R.C. 124.38 applied only to the accumulation of sick leave. R.C. 124.29 applied solely to the restoration of employment after military service, and R.C. 124.30 affected only temporary or exceptional appointments. We must determine the legislative intent primarily from the language chosen by the General Assembly, and in the administration of

---

[1] R.C. 9.441, effective December 29, 1983, reads in full:

"(A) As used in this section, 'affected employee' means a municipal employee who becomes a county employee, or a county employee who becomes a municipal employee, as the result of any of the following:

"(1) The merger of a municipal and a county office;

"(2) The merger of municipal and county functions or duties;

"(3) The transfer of functions or duties between a municipal corporation and county.

"(B) The new employer of any affected employee shall treat the employee's prior service with such former employer as if it had been served with the new employer for the purpose of compensating the employee or granting him any other employee right or benefit which is based upon length of service.

"(C) The new employer shall assign an affected employee to a pay rate that is not less than ninety per cent of the pay rate earned by the employee during the year concluding with the end of the pay period immediately preceding the effective date of the merger or transfer."

public agencies, the authorization of or requirement for the expenditure of public funds must be clearly stated. We decline to infer that the General Assembly intended that prior service with another political subdivision must be credited for purposes of determining step raises simply because it had, in 1981, required a similar credit for computation of vacations, sick leave and the like.

We find nothing in the agreement whereby the sheriff undertook to compute the step raises on the basis of the city starting date. The appellees point to the provisions, quoted above, requiring the county to accept years of city service as "consecutive employment," but those words are clearly associated with the computation of vacation time. We again look to the language of the controlling document to determine the intent of the parties. Further, the officers were not told at the time they applied for employment by the sheriff that their step raises would date back to their city starting dates. We hold that the recognition of city service was limited in the agreement to the computation of vacation time and nothing else.

Finally, appellees contend that the sheriff's failure to use the city starting dates for their step raises was contrary to their "reasonable expectations," apparently claiming entitlement in the name of general equity. We are unpersuaded. There can be no "reasonable expectations" without the existence of circumstances that give rise to them under established principles. The law does not create entitlement to compensation in a vacuum, and we have demonstrated above that neither the statutes nor the agreement mandated credit for city service in determining the appellees' step raises.

On the other hand, under R.C. 325.17, the sheriff has wide discretion in fixing the compensation of his deputies and employees, subject only to specific strictures found elsewhere in the statutes. His offer to the city's employees was an offer of new employment, and each offer was made under a uniform and comprehensive plan. Part of that plan was to grant annual step raises, and the sheriff's choice of his hiring date was both logical and reasonable. The new employees had already received from the city all benefits arising from that employment (including compensatory time awards and longevity payments, items not explained in the record before us).

The trial court erred. The judgment below is reversed. The appellants being entitled to judgment in their favor as a matter of law, we declare that appellees are not entitled to have their step raises determined on the basis of their respective city starting dates and that the sheriff has no obligation to pay any amounts to appellees other than the step raises based on the county starting date.

*Judgment reversed.*

BLACK, P.J., DOAN and UTZ, JJ., concur.